**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SMART OPTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12 C 2498 |
| ) | |
| JUMP ROPE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On November 13, 2012, the Court granted Defendant Jump Rope, Inc.'s ("Jump Rope") motion for summary judgment of non-infringement. (R. 58, Sum. Jgmt. Op.) Plaintiff Smart Options, LLC ("Smart Options") appealed that judgment to the Federal Circuit. (R. 61.) Jump Rope then filed a motion for sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 11. (R. 64, Mot.) For the following reasons, the Court grants the motion for sanctions.

**BACKGROUND**

Smart Options owns United States Patent No. 7,313,539 ("'539 patent"). It brought the present suit alleging that Jump Rope had infringed the '539 patent. As explained in greater detail in the Court's summary judgment opinion (R. 58), Smart Options utilizes the '539 patent to operate the website www.optionit.com. (R. 1, Compl. ¶ 7.) On that website, consumers may purchase an "option" to buy a good, service, or ticket to an event at a certain "reservation price" within a certain period of time. (Uncontested Facts ¶ 6).[1] If the purchaser opts not to buy during

---

[1] "Uncontested Facts" refers to Jump Rope's 56.1 statement of facts (R. 26) and Smart Options' response to those 56.1 facts (R. 41), which the Court reviewed when ruling on Jump

that period, Smart Options does not refund the "option fee" which the purchaser paid to obtain the right to purchase the product at the reservation price. (*Id*. ¶ 8.)

Jump Rope operates an application for smartphone devices that allows users to bypass the entrance line at certain events or facilities. (*Id*. ¶¶ 21-22.) With this application, a user can purchase a "Jump" which allows him to skip the line at that event or facility. (*Id*. ¶¶ 23-28.) Once a user purchases the Jump, he can immediately access the club without any further purchase. (*Id*. ¶ 29.)

On May 22, 2012, after Smart Options filed the current infringement action against Jump Rope, Jump Rope served Smart Options with a Rule 11 motion pursuant to Rule 11(c)(2). (R. 64-1, Ex. A, Orig. Rule 11 Mot.) In that motion and the corresponding cover letter, Jump Rope informed Smart Options that it planned to seek attorneys' fees and costs if Smart Options did not dismiss the suit and the Court entered a judgment finding that Jump Rope did not infringe the '539 patent. (*Id*. at ECF 1.) In the motion, Jump Rope also explained why it believed that Smart Options violated Rule 11 by filing a "meritless action," stating, in part:

> Plaintiff alleges violation of a patent that covers providing options on the right to purchase goods or services at a future time. Defendant's software application, however, does not provide options or charge option fees. Rather, it allows someone to buy the service provided – a right to "jump the line" at an event or facility. Plaintiff and its counsel could have and easily should have discovered this, as the iPhone/Android application they accuse is free to download.

(*Id*. at ECF 2.) Despite receiving Jump Rope's letter and motion, Smart Options did not withdraw or amend its complaint.[2] Jump Rope, therefore, filed a motion for summary judgment

---

Rope's motion for summary judgment of non-infringement.

[2] Smart Options acknowledged receipt of this motion in the initial status report. (R. 15, St. Rpt. at 2.)

of non-infringement. (R. 24.) In its November 13, 2012 opinion granting summary judgment, the Court concluded that, based on the factual record at that stage, Jump Rope did not meet the limitations included in the '539 patent. (Sum. Jgmt. Op. at 11-13.) The Court found, for example, that:

> [u]nlike Smart Options which sells a purchaser a right to buy a product at a specific price at some point in the future, Jump Rope sells the actual product or service–immediate access to the front of the line plus the entrance fee to the event or facility. A Jump Rope customer owns the Jump as soon as it completes the transaction, whereas a Smart Options customer must make an additional purchase at some point in the future, at the reservation price, to obtain the good or service. Because Jump Rope sells a good or service, not a "right" to obtain a good or service, Jump Rope does not sell "options" under the '539 patent.

(*Id*. at 11 (internal citations omitted).) The Court also found that Smart Options' doctrine of equivalence allegations failed. (*Id*. at 13.)

## LEGAL STANDARD

Although this is a patent case that is appealable to the Federal Circuit, Seventh Circuit law applies to procedural issues relating to whether to impose sanctions. *See, e.g., Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328 (Fed. Cir. 2011) (applying Ninth Circuit law to review Rule 11 sanctions); *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010) ("In reviewing Rule 11 sanctions, we apply the law of the regional circuit."). Federal Circuit law applies to the substantive issues of patent law, however, such as what type of pre-filing investigation Rule 11 requires in the patent context. *See Pregis Corp. v. Kappos,* 700 F.3d 1348, 1354 (Fed. Cir. 2012) ("Federal Circuit law applies to 'issues of substantive patent law and certain procedural issues pertaining to patent law.'") (quoting *Research Corp. Techs., Inc. v. Microsoft Corp*., 536 F.3d 1247, 1255 (Fed. Cir. 2008)); *see also Lanphere v. 1 Corp., No.* 10 C 4774, 2012 WL 1965436, at *3-4 (N.D. Ill. Apr. 23, 2012) ("Defendants are correct that Rule 11

and Federal Circuit case law require a plaintiff to engage in a meaningful investigation, including claim interpretation and an infringement analysis, in regard to alleged patent infringement prior to filing suit.") (citing *Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997)).

In the Seventh Circuit, "an attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact." *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) (quoting Fed. R. Civ. P. 11(b)). Specifically, a court "may impose Rule 11 sanctions for arguments 'that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.'" *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968-69 (7th Cir. 2000) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)); *see also Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003) ("Rule 11 requires that an attorney or party, certify to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and that the allegations and other factual contentions have evidentiary support."); *Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) ("Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation."). Under Rule 11(c)(4), sanctions may include "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

"The burden of proof is on the Rule 11 fee opponent to establish objective reasonableness and adequate pre-filing investigation once a prima facie showing of sanctionable conduct has occurred." *Vandeventer v. Wabash Nat. Corp.*, 893 F.Supp. 827 (N.D. Ind. 1995) (citing *Shrock*

*v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir.1987)). Specifically,"[o]nce a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007); *see also Bannon v. Joyce Beverages, Inc.*, 113 F.R.D. 669, 674 (N.D. Ill. 1987) ("Once the movant puts forth a prima facie showing that the facts as known to the plaintiff before he filed the complaint were not consistent with allegations in the complaint, certainly the burden shifts to the non-movant to explain that either the facts are not as they have been presented or that in spite of the facts the circumstances at the time the pleading was filed, reasonable inquiry having been made, justified making the allegations.").

The Supreme Court has instructed that Rule 11 "requires a court to consider issues rooted in factual determinations" and has explained, as an example, that "to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). "The court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office and Prof. Emps. Int'l Union*, *Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citing *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993). Furthermore, the Seventh Circuit requires that "district judges reflect seriously, and consider fully, before imposing (or denying) sanctions." *Malec Holdings II Ltd. v. Eng.,* 217 Fed. Appx. 527, 529 (7th Cir. 2007) (citing *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 936 (7th Cir. 1989)).

## ANALYSIS

I. **Jurisdiction**

As a threshold matter, Smart Options argues that its timely filing of its notice of appeal to the Federal Circuit divested the Court of jurisdiction, and therefore the Court lacks the authority to rule on Jump Rope's Rule 11 motion. (R. 70, Resp. at 1-4.) Smart Options correctly recognizes the general rule that the act of filing a notice of appeal divests the trial court of jurisdiction over matters related to the appeal. (*Id.* at 2; *see also U.S. v. Horrell*, Nos. 11-3846, 12-1205, 2012 WL 5462564, at *2 (7th Cir. Nov. 9, 2012) (citing *Griggs v. Provident Cons. Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982)). Filing a notice of appeal, however, does not divest a district court of jurisdiction over a Rule 11 motion for sanctions. *See, e.g., Kathrein v. Siegel,* No. 05 C 1718, 2005 WL 5266862, at *1 (N.D. Ill. Aug. 23, 2005), *vacated on other grounds*, 166 Fed. Appx. 858 (7th Cir. 2006) ("Every circuit to consider the issue [of jurisdiction-divestiture] has concluded that the doctrine does not apply to postappeal Rule 11 motions or awards."); *Zahran v. Frankenmuth Mut. Ins. Co.,* No. 94 C 4827, 1997 WL 53107, at *1 (N.D. Ill. Feb. 6, 1997) ("We retain jurisdiction to consider motions for Rule 11 sanctions despite the pending appeal on the case's underlying merits.") (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136, 112 S. Ct. 1076, 117 L. Ed. 2d 280 (1992)); *Gould v. Kemper Nat. Ins. Cos.,* No. 93 C 7189, 1995 WL 573426, at *4 (N.D. Ill. Sept. 7, 1995) (stating that the court retained jurisdiction to impose sanctions despite pending appeal); *Hammond Group, Ltd. v. Spalding & Evenflo Cos., Inc.*, No. 87 C 10098, 1994 WL 585717, at *2-3 (N.D. Ill. Oct. 19, 1994) ("As a motion for Rule 11 sanctions is appropriately characterized as a collateral motion, this Court has jurisdiction to consider the motion despite the fact that the merits of the case are

pending on appeal."). Indeed, the Supreme Court explained in *Cooter & Gell* that Rule 11 sanctions address a collateral issue, and therefore a district court can rule on a motion for sanctions even after the court no longer has jurisdiction over the remainder of the case. 496 U.S. at 384 (holding that a court can address a Rule 11 violation even after the court dismisses the action); s*ee also Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 364 (7th Cir. 2010). As a result, a Rule 11 motion is not a matter related to an appeal which divests the Court of jurisdiction. The Court, therefore, may and will assert jurisdiction over Jump Rope's Rule 11 motion.

## II. Rule 11 Allegations

"Rule 11 of the Federal Rules of Civil Procedure imposes on any party who signs a pleading, motion, or other paper – whether the party's signature is required by the Rule or is provided voluntarily – an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides Inc., v. Chromatic Comm., Ent. Inc.*, 498 U.S. 533, 550, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991). Jump Rope argues that Smart Options and its counsel violated Rule 11 because (1) the "claims [in the complaint] were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law (Rule 11(b)(2)); and (2) "the factual contentions did not have evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery (Rule 11(b)(3))." (Mot. at 1.) Specifically, Jump Rope argues that Smart Options did not sufficiently investigate its claims or construe the claim terms prior to bringing suit. Although Smart Options argues that it had a reasonable, non-frivolous basis to

7

assert its infringement claim, it has failed to offer evidence of specific investigative steps it took before filing.³ *See, e.g.,View Eng'g Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 986 (Fed. Cir. 2000) ("The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11."). Moreover, Smart Options has not explained how it construed the material claim terms, and is, in fact, silent on whether it did construe many of the terms. *See, e.g., id*. at 985 (noting that the plaintiff counsel's affidavit made no reference to any claim construction of infringement analysis conducted by counsel).

A plaintiff alleging infringement must engage in a reasonable, meaningful investigation, including claim interpretation and infringement analysis, prior to filing its complaint. *See, e.g., Lanphere v. 1 Corp*., No. 10 C 4774, 2012 WL 1965436, at *4 (N.D. Ill. Apr. 23, 2012) (citing *Judin v. U.S.*, 110 F.3d at 784); *see also Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."); *View Eng'g,* 208 F.3d at 986 ("Before filing counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement."). Whether a party's pre-filing

---

³ Smart Options also misguidedly argues that it had an adequate legal basis for filing its complaint because its patent is valid, even though Jump Rope does not challenge the validity of the patent. (Resp. at 5.) Rather, Jump Rope argues that Smart Options did not sufficiently investigate whether Jump Rope's applications infringed Smart Options' presuambly valid patent.

investigation "'is 'reasonable' depends on whether the issue is central, the stakes of the case, and related matters that influence whether further investigation is worth the costs.'" *Dohm v. Gilday*, No. 02 C 9056, 2004 WL 1474581, at *1 (N.D. Ill. Jun. 29, 2004) (quoting *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (en banc)).

Smart Options' Rule 11 Response, citing to a declaration from Smart Options' counsel, Geoffrey Baker ("Baker"), outlines the pre-filing investigation Smart Options allegedly performed. Notably, Smart Options and Baker use conclusory words to describe the pre-filing investigation, stating that Baker downloaded, reviewed and analyzed Jump Rope's application, and compared each and every claim to Jump Rope's application. (Baker Decl. ¶¶ 4(c), 4(d), 4(h), 9, 10.) Baker provides no detail, however, about what steps he took to conduct his analysis or how he compared the claims to the application. As Jump Rope notes, the declaration, and Smart Options' Response, lack screenshots from the application, statements detailing any use of the application, statements showing any step in the purchase of a Jump, or other specific evidence of investigative measures. (R. 71, Reply at 8.) Rather, Baxter dedicates much of his declaration to statements concerning immaterial discovery disputes[4] and irrelevant patent issues relating to a third-party competitor, Zoomline. (*See, e.g.,* Baxter Decl. ¶¶ 17-29.)

Furthermore, although Baker states that he downloaded Jump Rope's smartphone application, he noticeably does not state that he purchased a "Jump" or actually used the

---

[4] Notably, after moving for summary judgment, Jump Rope moved to stay discovery pending resolution of the motion. (R. 30.) Smart Options did not appear in Court to oppose the motion, which the Court consequently granted. (R. 37.) Moreover, any post-filing discovery would not save Smart Options as the relevant inquiry here is what pre-filing investigation Smart Options conducted. *See, e.g., Corley v. Rosewood Care Center, Inc. of Peoria,* 388 F.3d 990, 1014 (7th Cir. 2004) ("The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery.").

application in any manner. (Ex. 1, Baker Decl. ¶ 4(d).) Indeed, Smart Options apparently relied upon certain Terms of Use from Jump Rope's website, www.jumpropetheapp.com, rather than basing its conclusions on anyone's use of the application. (Resp. at 7; Ex. 1, Baker Decl. ¶ 12.) In fact, at summary judgment, Smart Options relied on a declaration from Ryan Gartner, a general manager at a Chicago bar, who did not attest that he had personally used Jump Rope's application or witnessed anyone purchase and use a Jump. (R. 47, Gartner Decl.) It seems unlikely that Smart Options would have relied upon this declarant, who lacked personal knowledge of how Jump Rope's application functioned, if it had conducted an investigation into the functions of the application relevant to potential infringement.

Although the law does not require that every patent-holder obtain an alleged infringer's product before bringing suit, obtaining and using the alleged infringer's product is an effective way to assess potential infringement. *See, e.g., Centillon Data Sys., LLC v. Convergys Corp.*, No. 104CV0073LJM–WTL, 2006 WL 20777, at *4 (S.D. Ind. Jan.4, 2006) ("Whether the patent holder must obtain the product an[d] analyze it. . . depends on the circumstances surrounding the pre-filing infringement analysis."). As noted by Jump Rope, "the facts here were easily and cheaply accessible to Smart Options and its counsel. They could have downloaded the free application and purchased a [J]ump." (Mot. ¶ 5.) Smart Options, however, did not take this simple, inexpensive investigative step, either before filing the complaint or after receiving Jump Rope's initial Rule 11 motion. As discussed above, Smart Options instead reviewed Terms of Use on Jump Rope's website – not even the terms of service on the application itself – rather than using the application to purchase a Jump.

Smart Options' failure to purchase a Jump is problematic because, as discussed in the Court's summary judgment opinion – and Jump Rope's initial Rule 11 motion – Smart Option's portrayal of the Jump Rope application is factually inaccurate. Indeed, Smart Options based its arguments at summary judgment and the present Rule 11 motion on the mistaken belief that Jump Rope requires a Jump-purchaser to pay an additional cover fee to enter the event or facility once he jumps to the front of the line. (*See, e.g.,* Sum. Jgmt. Op. at 7, n. 3; Baker Decl. ¶ 14 (stating that "Jump Rope is selling the right but not the obligation to later purchase access or a ticket," therefore, the "cost of this right is an 'option fee' and the separate cost of access or a ticket is a 'reservation price.'").)

Specifically, claim 1 of the '539 patent requires payment of an "option fee" to obtain an "option" to purchase a good or service at a later point in time at a "reservation price." A Smart Options purchaser, therefore, must make two separate payments to complete the transaction. Jump Rope's application, however, requires only a single payment, which, as explained in the Court's summary judgment opinion, means it does not meet all of the limitations in claim 1. (*Id.* at 10-11.) In its opinion, for example, the Court stated:

> Smart Options argues that the "option fee" is the price of the Jump and the "reservation price" is the additional entrance fee or cover charge a purchaser must pay to enter the event or facility. As previously discussed, **this is factually inaccurate**. Even viewing the evidence in the light most favorable to Smart Options, there is no dispute that the price of the Jump covers both the ability to skip to the front of the line and the entrance fee to the event or facility.

(*Id.* at 11.) (emphasis added). Smart Options' mischaracterization of Jump Rope's product is therefore significant because whether Jump Rope requires purchasers to make one or two payments to enter the event or facility is determinative of whether Jump Rope's application infringes Smart Options' patent.

11

Notably, in the original Rule 11 motion Jump Rope served on Smart Options, Jump Rope described how its application worked and why it did not meet the specific limitations of the '539 patent. (Orig. Rule 11 Mot. at ECF 3-5); s*ee also Stove Builder Intern., Inc. v. GHP Group, Inc.*, 280 F.R.D. 402, 404 (N.D. Ill. 2012) (finding it notable that defendant's "Rule-directed shot across [plaintiff's] bow . . . was not just a boilerplate and generalized in terrorem tactic to head off an unpleasant lawsuit-something to which a lawyer recipient might pay no heed as just so much hot air."). Indeed, Jump Rope explained why the '539 patent did not cover Jump Rope's application based on the claim terms "option", "option fee", and "reservation price." (*Id*.) Jump Rope also specifically described how a Jump Rope customer's transaction is complete, with no further payment or purchase necessary, after he clicks "Complete Purchase" and buys the Jump. (*Id*. at ECF 4.)

Despite Jump Rope's warnings that its application did not meet the limitations of claim 1, however, Smart Options did not purchase a Jump or ensure that the basis for its claims was not "factually inaccurate" before continuing to pursue its infringement claims. *See, e.g., Fabriko*, 536 F.3d at 610 (upholding the district court's imposition of Rule 11 sanction when offending party failed to withdraw or correct its claim "after being put on notice of the problems with its case."); *see also* Fed. R. Civ. P. 1993 Advisory Committee Notes (stating that a court may subject "litigants to potential sanctions for insisting upon a position after it is no longer tenable."). Smart Options' failure to avail itself of the easy, inexpensive opportunity to actually test and analyze Jump Rope's product, particularly after it received Jump Rope's initial Rule 11 motion, is unreasonable. *See, e.g., Centillon*, 2006 WL 20777 at *4 (holding that the plaintiff's factual infringement inquiry was objectively unreasonable because neither the plaintiff nor its

12

attorneys ever actually tested the allegedly infringing product to determine if it met the patent's limitations); *see also Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997) (finding that plaintiff failed to meet the standards of Rule 11 when it offered no explanation for why it failed to obtain or attempt to obtain the accused device which it could have purchased relatively inexpensively).

Moreover, even if Baker had purchased a Jump or had sufficient information about Jump Rope's application to compare its functionality to the '539 patent, Smart Options failed to reasonably construe the claim terms in order to allow for such a comparison. *See, e.g,, Eon-Net*, 653 F.3d at 1328-29 (upholding district court's finding that plaintiff failed to conduct a reasonable presuit investigation because it did not "perform an objective evaluation of the claim terms when reading those terms on the accused device," even though it did examine portions of defendant's website and conclude that it worked in an infringing manner"); *see also View Eng'g.*, 208 F.3d 981 (requiring a party to apply the claims of the patent to the accused device before filing suit). Specifically, Smart Options contends that it met its obligations by using Judge Lefkow's presumably non-frivolous construction of certain terms in *The Ticket Reserve, Inc. v. OptionIt, Inc.*, 09-cv-7375 in order to compare "each and every claim element of claim 1 of the 539 patent to Jump Rope's smartphone application." (Baker Decl. ¶¶ 4(a), 4(b), 4(h), 7-12; Resp. at 6 ("Since SmartOptions used Judge Lefkow's claim construction, SmartOptions' construction of claim 1 of the 539 patent is nonfrivolous.").) Judge Lefkow, however, did not construe most of the claim terms at issue, thereby making it impossible for Smart Options to have compared "each and every claim element" using just Judge Lefkow's construction.

Judge Lefkow, for example, did not construe the term "option" in *Ticket Reserve*. (R. 16-1, Lefkow Claim Constr.) Baker, therefore, could not have relied upon any prior construction

13

when comparing the "option" limitation of claim 1 to Jump Rope's application. Rather, Baker needed to construe "option" in a non-frivolous manner before applying it to Jump Rope's application to assess potential infringement. *See Q-Pharma,* 360 F.3d at 1300-01; *View Eng'g,* 208 F.3d at 986. Indeed, the construction of "option" is key to determining whether Jump Rope infringed the '539 patent. *See* (Resp. at 8 (agreeing with Jump Rope that "the claim limitation distinguishing option and option fees from the reservation price is the heart of the patent" (citing R. 64, Mot. at 4).)

Despite recognizing that the term "option" is at the "heart of the patent", Smart Options does not offer any construction of "option" in its Rule 11 Response. (*Id*; *see also* R. 70.) Baker, however, offers a potential construction in his declaration. Specifically, Baker asserts that he "understood prior to filing . . . an option is a 'right to priority' or a 'right to preferred access.'" (Baker Decl. ¶ 11.) Notably, Smart Options proposed a different construction ("a contract conveying a right to buy or sell a designated item at a specific time during a stipulated period") to Judge Lefkow and the Patent Examiner. (R. 25, Def.'s Mem. at 9-10; Report, Ex. 1; Uncontested Facts ¶ 15.) Smart Options also agreed to use the latter construction for summary judgment purposes. (R. 41, Sum. Jgmt. Resp. at 1, n. 1.) This divergence in Smart Options' construction of "option" troubles the Court, particularly in light of Smart Options' failure to provide any explanation in its Rule 11 Response as to how or why it construed the term "option" in the manner Baker states in his declaration. *Contra* Q-Pharma, 360 F.3d 1295 (finding construction not frivolous because it followed the "standard cannons of claim construction and was reasonably supported by the intrinsic record."); *Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 1072 (Fed. Cir. 2002) (finding construction not frivolous based on a dictionary

14

definition of the word and language quoted from the patent). Without any justification of how and why Smart Options construed "option" as it did, the Court cannot conclude that Smart Options' construed the term in a reasonable, non-frivolous manner. *See, e.g.*, *View Eng'g*, 208 F.3d at 986 (finding that a patent holder's failure to demonstrate "exactly why" it had a reasonable chance of proving infringement "should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions"). To the contrary, its inconsistent interpretation of the term, and its insistence that it relied on Judge Lefkow's construction of claim 1, which did not include a construction of "option," supports the conclusion that Smart Options either did not construe the term prior to filing its complaint, or did so in a baseless manner.

Smart Options also does not explain how it construed the other limitations of claim 1 relevant to infringement, other than "option fee" and "reservation price," which Judge Lefkow did construe. Specifically, Judge Lefkow did not construe the terms "wherein a provided option fee is not part of a reservation price paid to purchase desired goods or services at a desired future time;" or "wherein the electronic option does not obligate a purchaser to actually purchase the desired goods or services for the reservation price at the desired future time." (R. 16-1, Lefkow Claim Constr.) Smart Options, therefore, needed to construe these terms and compare them to Jump Rope's product before filing its complaint, or, at a minimum, after Jump Rope sent Smart Options is Rule 11 letter. In its Response, however, Smart Options does not explain the construction it gave these terms prior to filing, let alone the bases for any constructions of these terms. Notably, Smart Options also did not offer any particular construction for these terms in its summary judgment briefing either. As a result, Smart Options has failed to meet its pre-filing

15

obligations, or at least to demonstrate to the Court that it met those obligations, as the record is silent regarding any efforts Smart Options took to construe these material claim terms.  *See, e.g,, Morningware, Inc. v. Hearthware Home Products, Inc*., No. 09 C 4348, 2011 WL 4729922, at *3 (N.D. Ill. Oct. 6, 2011) ("'In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer **exactly why** it believed before filing the claim that it had a reasonable chance of proving infringement.'") (quoting *View Eng'g, Inc*., 208 F.3d at 986) (emphasis added).

As a result, Smart Options has offered no evidence of specific steps it took to analyze Jump Rope's product, other than downloading it and reviewing Terms of Use from Jump Rope's website.  Indeed, even though Jump Rope's product is easily accessible and purchasing a Jump would have only cost Smart Options tens of dollars, Smart Options failed to use Jump Rope's product before filing it suit.  (*See, e.g.,* Reply at 9 (screenshots of two different Jumps costing $35 and $40).)  More troubling, Smart Options failed to use Jump Rope's product, or investigate the functionality of its application, even after Jump Rope served its original Rule 11 motion detailing the deficiencies in Smart Options' allegations.  Smart Options also could not have sufficiently compared its patent with Jump Rope's product, not only because it did not have familiarity with its functionality, but because it did not construe the claim terms.  Smart Options, therefore, did not conduct a reasonable pre-filing investigation and had no reasonable factual basis to file its complaint, or to refuse to withdraw the complaint during the safe harbor period after Jump Rope served its original Rule 11 motion and letter.  *See, e.g., Pellegrini v. Analog Devices, Inc*.,  312 Fed. Appx. 304, 308 (Fed. Cir. 2008) (upholding district court's decision to impose Rule 11 sanctions based on its finding that plaintiff  "failed to demonstrate any factual

basis upon which to claim direct infringement of the [patent] and that he failed to conduct a sufficiently reasonable pre-filing inquiry").

## CONCLUSION

For the foregoing reasons, the Court grants Jump Rope's motion for sanctions. Specifically, the Court awards Jump Rope all of the reasonable attorney's fees directly resulting from Smart Options' frivolous complaint, including attorney's fees incurred during the filing of the present Rule 11 motion. The Court, therefore, grants Jump Rope leave to file a petition detailing its attorneys' fees in this action, along with affidavits or declarations supporting the rates charged and time spent defending this action, on or before March 4, 2013. Smart Options may file a response on or before March 25, 2013.

**DATED: February 11, 2013**

                                                   **ENTERED**

                                                   **AMY J. ST. EVE**
                                                   **United States District Court Judge**